## FREEMAN v. STATE.

'(*Nashville.*   December Term, 1906.)'

1. **FISH LAW.** Acts construed.  Resident of State may catch in certain streams, for use on his own table, except by poison and explosives.

   Under Acts 1895, ch. 127, as amended by Acts 1897, ch. 321, any resident of this State may catch fish for use on his own table. in certain streams, viz:  Cumberland river (except in Robertson and Montgomery counties), Tennessee river, Mississippi river, Forked Deer river, Big Sandy river and Duck river in Bedford and Hickman counties, by any means except poison and explosives; but the catching of fish in said streams for any other purpose than "use on his own table" by any means except by rod, or line, or trot line, is prohibited.

   Acts cited and construed:  1895, ch. 127; 1897, ch. 321.

2. **SAME.** Presentment.  Failing to negative purpose to catch "for use on his own table" is insufficient.

   A presentment for a violation of the statutes named in headnote 1, by fishing in the Cumberland river, containing no averment which negatives a purpose on the part of the accused to catch the fish for use on his own table, is insufficient, and will be quashed on motion seasonably interposed in his behalf.

3. **SAME.** Same.  But such infirmity will be cured by verdict, in the absence of motion to quash.

   The lack of an averment that defendant caught the fish for a purpose other than for use on his own table, in a presentment which avers that defendant "did unlawfully fish with a seine," etc., and "unlawfully did catch fish in the waters of the Cumberland river by a contrivance other than rod, line, or trot line," is cured by a verdict of guilty, in the absence of a motion to quash seasonably made.

   Case cited and approved:  Whim v. State, 117 Tenn., 94.

FROM DAVIDSON.

Appeal from the Criminal Court of Davidson County. —W. M. HART, Judge.

CHERRY & STEGER, for Freeman.

ASSISTANT ATTORNEY-GENERAL FAW and J. H. ACKLEN, State Game Warden, for State.

MR. JUSTICE MCALISTER delivered the opinion of the Court.

The presentment in this case embraces two counts: First, that "the defendant, James Freeman, on the —— day of May, did unlawfully fish with a seine in the waters of the Cumberland river, against the peace and dignity of the State;" second, that "the said Jim Freeman, on the day and year aforesaid, in the county aforesaid, unlawfully did catch fish in the waters of the Cumberland river by a contrivance other than rod, line, or trot line, against the peace and dignity of the State."

The defendant was found guilty by the court, who tried the case without the intervention of a jury.

The facts in the case are undisputed, and are thus set out in the record:

"James Freeman is the owner of a farm in Davidson county, on the bank of the Cumberland river, about two miles below Nashville. For about thirty years he has been fishing in the Cumberland river opposite his own

land or lands, where he has the written permission of the owner, with what are known as 'wing nets.' These wing nets consist of netting stretched over hoops somewhat similar to barrel hoops, the first of which is about thirty inches in diameter, and the succeeding hoops greatly decreasing in size. The net is about twelve feet in length, and a wing some five feet long on each side. One end of the net is attached to the shore, mouth upstream.

"The Cumberland river is a navigable stream at least one hundred yards wide at this place. Freeman used part of his catch for his own consumption, selling the surplus, if any, to the public generally. The kinds of fish caught are generally buffalo, carp, drum, and cat. This fishing and selling has taken place in the months of March, April, and May, and the place in the Cumberland river where the nets are placed is in Davidson county, and in said months these nets were at times altogether between high and low water mark, and at other times below low water mark in the channel. They do not interfere with navigation, and do not interfere with the ascent and descent of fish further than nets of the above-described dimensions necessarily do. Defendant offered to prove:

" 'The described varieties of fish are not what are termed "game fish," and from their habits are destructive to the eggs of game fish, but are each and all valuable as food fish.'

118 Tenn—7

"To which proof counsel for State excepted as irrelevant, incompetent, and immaterial to the issues in this cause."

Chapter 127, p. 256, Acts of 1895, provides as follows: "An act for the protection of fish in the State of Tennessee.

"Section 1.   Be it enacted by the general  assembly of the State of Tennessee, that it  shall be unlawful for any person or persons to catch, kill or wound any fish in any of the streams, lakes, rivers or ponds in the State of Tennessee, by seine, trap, gun, grabbling with hands, gig, poison, dynamite or in any way or by any contrivance or device whatsoever, except by rod or line or trot line: Provided, first, the provisions of this section shall not apply to private ponds, and, second, to minnows not exceeding four and a  half inches in length, which may be caught exclusively for bait by dip net not to exceed six feet in length.

"Sec. 2.   Be it further enacted, that it shall be unlawful for any person, company or corporation to build any dam or obstruction across any of the streams in the State of Tennessee, or any fish gate or trap for the purpose of corralling or catching fish.

"Sec. 3.   Be it further enacted, that any person violating any of the provisions of this act shall be deemed guilty of a misdemeanor and fined not less than ten or more than fifty dollars, except that in case of wounding or destroying fish by means of poison or dynamite or any other explosive whatever, the person or persons

found guilty of same shall be deemed guilty of a misde-meanor   and imprisoned not less than six months in county jail."

It appears that this act was amended by chapter 321, p. 679, of the Acts of 1897,  as follows:

"Section 1.   Be it enacted by the general assembly of the State of Tennessee, that an act approved May 20, 1895, being chapter 127 of the Acts of 1895, entitled 'An act for the protection of fish in the  State of Tennessee,' be and is hereby so amended that hereafter it shall be lawful for any resident of this State to catch fish for use on his own table, but not otherwise, in the Cumberland river, Tennessee river, Mississippi river, Obion river, Forked Deer river, Big Sandy river, and Duck river, in Bedford and Hickman counties, by any means except poison and* explosives:   Provided, that this shall not apply to the Cumberland river in Robertson and Mont-gomery counties."

The result of this legislation is that any resident of this State may catch fish for use on his own table by any means except poison and explosives, but the catch-ing of fish for any other purpose than "use on his own table" is still prohibited by any means except by rod, or line, or trot line.

Now, it appears from the stipulation of agreed facts in this case, that the defendant below fished with what is known as "wing nets,"  The net is about twelve feet in length and has a wing some five feet long on each side, with netting stretched over hoops, and one end of the net  attached to the shore, mouth upstream.

The act of 1895 expressly prohibits any fish gate or trap for the purpose of corralling or catching fish, or any contrivance or device whatever for catching them, except by rod, or line, or trot line. Minnows may be caught by dip net not exceeding six feet in length, but the device used by the plaintiff, of course, does not come under this exception. Moreover, it appears that the defendant below, not only caught this fish for his own consumption, but that he sold the surplus to the public generally.

Now, it is insisted on behalf of the defendant that he is not presented under the act of 1897, but under the act of 1895; that he is charged with unlawfully catching fish, and not with the offense of unlawfully disposing of them. It is said he caught them by a lawful contrivance under the act of 1897, which only prohibits dynamite and poison, and that, if his disposition of his surplus by sale is an offense, it should be specifically charged, and there is no averment in the indictment that he caught the fish for a purpose other than that for use on his own table. It is true, as argued, that the contrivance or device employed by plaintiff for catching fish was expressly authorized under the act of 1897, provided the fish were caught for use on his own table.

The gravamen of the offense is the employment of such means to catch fish for public sale or other disposition of them. It is true the presentment does not on its face negative the purpose on the part of the defendant to catch these fish for use on his own table, and, if

a motion to quash had been seasonably interposed, this objection might have been made available to the defendant. The presentment, however, charges that the defendant "did unlawfully fish with a seine" and unlawfully did catch fish," etc.

In Whim v. State, 117 Tenn., 94, 94 S. W., 674, plaintiff in error was convicted of "knowingly, willfully, and maliciously cutting and removing, for the purpose of marketing, timber from the lands of another, without the consent of the owner of the timber so cut and removed," in violation of the provisions of chapter 106, p. 257, of the Acts of 1897. In that case it was insisted that the judgment should be arrested for the reason that the indictment failed to charge that the removal of the timber was without the consent of the owner, which was an indispensable ingredient to constitute the crime charged by the statute. It did not appear from the record that a motion to quash or in arrest of judgment had been interposed in the court below.

This court held that, since the indictment averred in the language of the statute that the removal of the timber was done maliciously, that term imported that it was done without the consent of the owner.

It was further held that the omission in the indictment was cured by the verdict, since it was necessary to show by proof that the act was committed without the consent of the owner.

We think that case is conclusive of the contention made in the present case. The proof herein shows that

the defendant used part of his catch for his own consumption and would sell the surplus to the public generally. So the infirmity in the indictment, in the absence of a motion to quash or in arrest of judgment, was cured by the verdict of the jury.

Affirmed.